## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | |
|---|---|
| Jane Doe (IES), an individual<br><br>*Plaintiff,*<br><br>v.<br><br>G6 HOSPITALITY, LLC,<br>G6 HOSPITALITY IP, LLC,<br>G6 HOSPITALITY PROPERTY, LLC,<br>G6 HOSPITALITY PURCHASING, LLC,<br>G6 HOSPITALITY FRANCHISING, LLC,<br>MOTEL 6 OPERATING, L.P.,<br>SONSVIC, LLC.<br><br>*Defendants.* | CIVIL ACTION NO. 1:23-cv-00464<br>Related Case:  1:23-cv-00269 |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW Plaintiff Jane Doe (IES), by and through the undersigned counsel, and respectfully submits her original complaint for damages and makes the following averments.

## SUMMARY

1.      Jane Doe (IES) files this civil lawsuit seeking compensation for the harm she suffered as a result of the sex trafficking she endured in a hotel owned, operated, maintained, and controlled by Defendants and their agents and employees.

2.      Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[1]

3.      Commercial sex act means any sex act, on account of which anything of value is

---

[1] 18 U.S.C. §1591; 22 U.S.C. § 7102.

given to or received by any person.[2] Traffickers or 'pimps' use threats, violence, manipulation, lies, debt, bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

4.      Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers.

5.      Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

6.      In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or should know engages in criminal sex trafficking.

7.      As discussed herein, Defendants derived financial benefit from facilitating sex trafficking by providing venues where traffickers could exploit victims, including victims like Jane Doe (IES), with minimal risk of detection or interruption.

8.      Defendants continued supporting traffickers, including Jane Doe (IES)'s trafficker, despite evident and apparent signs of widespread and ongoing sex trafficking at its hotels and specifically at the Motel 6 located at 1860 Bowles Ave., Fenton, MO 63026. Defendants were, therefore, knowingly receiving a benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

---

[2]
 18 U.S.C. §1591(e)(3).

## PARTIES

9.      Jane Doe (IES) is a natural person who is currently a resident and citizen of Missouri.

10.      Defendant G6 Hospitality LLC is a for-profit Delaware company with its principal place of business in Carrolton, Texas. It may be served through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

11.      Defendant G6 Hospitality IP, LLC is a for-profit Delaware company with its principal place of business in Carrolton, Texas. It may be served through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

12.      Defendant G6 Hospitality Property, LLC is a for-profit Delaware company with its principal place of business in Carrolton, Texas. It may be served through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

13.      Defendant G6 Hospitality Purchasing, LLC is a for-profit Delaware company with its principal place of business in Carrolton, Texas. It may be served through its registered agent: Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

14.      Defendant G6 Hospitality Franchising, LLC is a for-profit Delaware company with its principal place of business in Carrolton, Texas. It may be served through its registered agent: Cogency Global Inc., 1601 Elm Street Suite 400, Dallas, TX 75201.

15.      Defendant Motel 6 Operating, LP is a for-profit Delaware company with its

principal place of business in Carrolton, Texas. It may be served through its registered agent: Cogency Global Inc., 1601 Elm Street Suite 400, Dallas, TX 75201.

16.     Defendants G6 Hospitality LLC, G6 Hospitality IP, LLC, G6 Hospitality Property, LLC, G6 Hospitality Purchasing, LLC, G6 Hospitality Franchising, LLC, and Motel 6 Operating, LP will collectively be referred to as "G6", "G6 Defendants" or "Franchisor Defendants." Upon information and belief, they operated, controlled, and/or managed the Motel 6 located at 1860 Bowles Ave., Fenton, MO 63026 for the entire trafficking period.

17.     Defendant Sonsvic, LLC is a Missouri limited liability company which does not maintain a registered agent for service in Texas and can be served by service on the Texas Secretary of State by service of two copies of the Complaint on  Secretary of State, James E. Rudder Building, 1019 Brazos, Room 105, Austin, Texas 78701 and then forwarded by the Texas Secretary of State to Sonsvic, LLC's agent for service in Missouri, Ruchir Bhakta at 1860 Bowles Avenue Fenton, MO 63026. Upon information and belief, it owned, operated, controlled, and/or managed the Motel 6 located at 1860 Bowles Ave., Fenton, MO 63026 at the time of Jane Doe (IES)'s trafficking.

## JURISDICTION AND VENUE

18.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

19.     Venue is proper in this Court pursuant to 28 U.S.C.  § 1391(b)(1) because all Defendants are residents of the State of Texas and the G6 Defendants are residents of the Eastern District of Texas.

20.     G6 Hospitality LLC, G6 Hospitality IP, LLC, G6 Hospitality Property, LLC, G6 Hospitality Purchasing, LLC, G6 Hospitality Franchising, LLC, and Motel 6 Operating, LP have

the same principal place of business, which is in Carrolton, Texas, within the Eastern District of Texas. Therefore, each is a resident of the Eastern District of Texas for the purpose of § 1391(b)(1).

21.    Under 28 U.S.C. §§ 1391(c)(2), the Franchisee is a resident of Texas for the purpose of § 1391(b)(1) because the Court has personal jurisdiction over Franchisee.

22.    Under 28 U.S.C. §§ 1391(d), the Franchisee is a resident of Texas for the purpose of § 1391(b)(1) because if the Eastern District of Texas were a separate state, Franchisee's contacts with the district would be sufficient to subject it to personal jurisdiction.

23.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of Texas.

24.    Each of the G6 Defendants participated in a joint venture operating the subject Motel 6 from a central location at the G6 corporate offices in Carrolton, Texas, within the Eastern District of Texas. On information and belief:

    a.    The relationship between the G6 Defendants was centered at the G6 corporate offices in the Eastern District of Texas.

    b.    The G6 Defendants signed agreements with one another related to the subject Motel 6 from G6 corporate offices in the Eastern District of Texas.

    c.    The G6 Defendants exercised joint control over operations of the subject Motel 6 from a central location at G6 corporate offices in the Eastern District of Texas.

    d.    The G6 Defendants distributed revenue earned from the subject Motel 6 among themselves from G6 corporate offices in the Eastern District of Texas.

    e.    The G6 Defendants developed policies for the subject Motel 6 from G6 corporate offices in the Eastern District of Texas.

    f.    The G6 Defendants communicated with one another regarding operation of the subject Motel 6 from G6 corporate offices in the Eastern District of Texas.

25.    Plaintiff's claims against the Franchisee arise out of Franchisee's contacts with

Texas through Franchisee's relationship with the G6 Defendants, which have their principal place

of business in the Eastern District of Texas. Franchisee's participation in a venture with the G6

Defendants operating the subject motels occurred, in substantial part, in Texas because:

    a. Upon information and belief, the Franchisee actively sought out a franchising relationship by contacting the G6 Defendants in Texas.

    b. Franchisee acknowledged that the negotiation, execution, and acceptance of the franchising agreement occurred in the Eastern District of Texas.

    c. Franchisee agreed that its ongoing performance of the franchising agreement would take place, in part, in the Eastern District of Texas.

    d. The franchising agreement had a choice of law provision selecting the law of Texas as the governing law.

    e. The franchising agreement required Franchisee to report information to the G6 Defendants in Texas, including information about all incidents involving safety, security, public relations, or serious injury to persons or property that occur at, or involve, the subject motels, including those involving sex trafficking victims like Jane Doe (IES).

    f. The Franchisee agreed to submit all notices required under the franchising agreement to the G6 Defendants in the Eastern District of Texas.

    g. The Franchisee was required to attend training and meetings in Texas.

    h. The G6 Defendants dictated policies related to safety, security, human trafficking, employee training and response as well as other subjects from their principal place of business in the Eastern District of Texas.

    i. The Franchisee had an ongoing obligation to participate in centralized programs operated by the G6 Defendants from their principal place of business in the Eastern District of Texas.

    j. The Franchisee was required to purchase insurance on behalf of one or more Texas entities (the G6 Defendants).

    k. Upon information and belief, reservation information for rooms at the subject motels passed through a system operated and managed by G6 from its principal place of business in Texas.

    l. Upon information and belief, payment information for rooms at the subject motels passed through a system operated and managed by the Franchisor in Texas.

    m.  The benefit that the Franchisee received from room rentals was governed by the Texas franchising agreement.

    n.  The Franchisee agreed to make all payments due under the franchising agreement at the G6 principal place of business in the Eastern District of Texas.

    o.  The Franchisee's operation of the subject motels was controlled and/or influenced by many policies set and enforced by the G6 Defendants from their principal place of business in Carrollton, Texas.

    p.  The Franchisee signed a software licensing agreement with the G6 Defendants for the property management software the G6 Defendants required Franchisee to use when operating the motel, including, but not limited to, when booking rooms at the hotel and processing payment for those rooms. The Franchisee agreed to file any lawsuit arising from the licensing agreement in the Eastern District of Texas and waived personal jurisdiction and venue objections.

## **FACTS**

**I.    Jane Doe (IES) was a Victim of Unlawful Sex Trafficking at Hotels Owned, Operated, Managed, and or Controlled by Defendants.**

26.    Jane Doe (IES)'s trafficking at the Motel 6 located on 1860 Bowles Ave., Fenton, MO 63026 began in 2007. Her trafficker controlled her through physical violence and force and made her engage in commercial sex acts for his financial benefit. Her trafficker posted ads on her behalf. He did not allow her to keep any of the money she made. Jane Doe (IES) was also abused mentally and physically. If she didn't make enough money, her trafficker would threaten to kill her family. On several occasions, the trafficker would hold a gun up to her head or punch her with his fist repeatedly.

27.    Between approximately 2007 and through 2013, Jane Doe (IES) was trafficked at the Motel 6 located at 1860 Bowles Ave., Fenton, MO 63026.

28.    Jane Doe (IES)'s trafficking had profound effects on her, consistent with "red flags" of trafficking that are well-recognized in the hospitality industry.[3]  These effects were obvious and

---

[3] See *supra* section II and accompanying footnote for discussion of "red flags" of trafficking.

apparent to the staff and management of the subject Motel 6 including effects on (IES)'s appearance, demeanor, movements throughout the hotel, and her interactions with her trafficker, hotel staff, and others. Observing these effects provided Defendants with notice that (IES) was being continually subjected to coercion, control, and exploitation.

29. Jane Doe (IES) remained under the continuous control of her trafficker through at least 2013.

## II. The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem.

30. The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what the Franchisor Defendants and Franchisee Defendant knew or should have known regarding the trafficking at their hotel property, including the trafficking of Jane Doe (IES).

31. Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[4] For years, sex traffickers have been able to reap their profits with little risk when attempting to operate within hotels.[5] In 2014, 92% of calls received by the National Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[6] Hotels have been found to account for over 90% of commercial exploitation of children.[7]

---

[4] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune (April 2019), https://fortune.com/2019/04/14/human-sex-trafficking-usslavery/ (citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council). "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.

[5] *See Human Trafficking in the Hotel Industry*, Polaris Project ( Feb. 10, 2016), https://polarisproject.org/blog/2016/02/10/human-trafficking-hotel-industry; *see also* Eleanor Goldberg, *You Could Help Save A Trafficking Victim's Life With Your Hotel Room Pic*, Huffington Post (June 2016), http://www.huffingtonpost.com/entry/taking-a-photo-of-your-hotel-room-could-help-save-a-traffickingvictimslife_us_57714091e4b0f168323a1ed7.

[6] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hotel Industry*, Cornell Hotel Report (Oct. 2015), https://scholarship.sha.cornell.edu/cgi/viewcontent.cgi?article=1222&context=chrpubs.

[7] *See* Erika R. George and Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking and Modern Slavery*, 46 N.Y.U. J. Int'l L. & Pol. 55, 66-67 (2013).

32.     Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.

33.     Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[8]

34.     Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:[9]

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals show signs of physical abuse, restraint, and/or confinement;

- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

- Individuals lack freedom of movement or are constantly monitored;

- Individuals avoid eye contact and interaction with others;

- Individuals have no control over or possession of money or ID;

---

[8] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023); National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-ReportingLove146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).
[9] *See Id.*

- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals have few or no personal items—such as no luggage or other bags;

- Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

- A group of girls appears to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

- Possession or use of multiple cell phones; and

- Possession or use of large amounts of cash or pre-paid cards.

35.    The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff.

36.    Toolkits specific to the hotel industry have been developed, which help hotel staff in every position identify and respond to signs of sex trafficking.[10]  From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

37.    The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion.[11]  It is also well understood that "prostitution," "sex trafficking," and "child sex trafficking" involve a single

---

[10] Department of Homeland Security, *Blue Campaign Toolkit*,
https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.
[11] *See, e.g., A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report,*
https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf; *Prostitution and Trafficking in Women: An Intimate Relationship,* https://www.ojp.gov/ncjrs/virtual-library/abstracts/prostitution-and-trafficking-women-intimaterelationship.

common denominator, the exchange of sex for money.

38.    The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[12]

39.    All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel property, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

40.    The most effective weapon against sexual exploitation and human trafficking is education and training.[13]  As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[14]

41.    This same conclusion is echoed by others who seek to eliminate sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[15]  In reference to companies like the

---

[12] *Id.*

[13] *Polaris, Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

[14] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf

[15] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

42.    Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers without taking reasonable steps to identify and prevent trafficking in its hotels is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

43.    Each of the Defendants had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to "red flags" of sex trafficking.

## III.    Sex Trafficking Has Long Been Prevalent at G6 Branded Properties, and Defendants Have Known About It.

44.    Defendants' actual knowledge is *not* limited to a general awareness of the problem of sex trafficking in the hotel industry. Each of the Defendants has known, since well before Jane Doe (IES)'s trafficking, that sex trafficking was ongoing and widespread at Motel 6 branded properties including the subject property.

45.    G6 branded properties includes the subject Motel 6.

46.    Use of G6 branded properties for sex trafficking is well known to the G6 Defendants. Motel 6 hotels are one of the five chains most frequently identified as a site of sex trafficking in federal criminal complaints.[16]

47.    A Los Angeles Motel 6 became such a hub for human trafficking and other criminal

---

[16] Sarah Meo and Louise Shelley, Sex Trafficking and Hotels: *Why there is a Need for Effective Corporate Social Responsibility* (Nov. 11, 2021), https://www.globalpolicyjournal.com/blog/11/11/2021/sex-trafficking-and-hotels-why-there-need-effective-corporate-social-responsibility.

activity that the G6 Defendants paid to settle a public nuisance lawsuit filed by the City of Los Angeles.[17]  From this lawsuit, G6 Defendants knew staff at its branded properties were facilitating sex trafficking and that it was generating revenue through policies that encouraged sex traffickers to operate at G6 brand properties.

48.    The settlement required the G6 Defendants to change policies that were facilitating sex trafficking.[18]  Based on information and belief, G6 has failed to adequately implement and enforce such changes.

49.    G6 intentionally ensures its hotels are "strategically located . . . close to airports, freeways, and other thoroughfares" making them attractive venues for trafficking and compelled prostitution.[19]

50.    Public statements of the G6 Defendants confirm that they knew that sex trafficking is a problem in the hotel industry and that they retained control over the response of their branded hotels to this problem. The G6 Defendants recognize that "[t]raffickers often use hotels and motels for sex trafficking activities due to the privacy extended to guests."[20]  They also acknowledged the significant role G6 has in the three D's: deterring, detecting, and disrupting sex trafficking in their branded hotels.[21]

51.    Unfortunately for Jane Doe (IES), the promises made by the Franchisor Defendants and Franchisee Defendants have proven empty. Defendants have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in

---

[17] *Studio 6 pays $250,000 to settle human trafficking suit* (Aug. 31, 2017), https://www.cbsnews.com/news/motel-6-pays-250000-to-settle-human-trafficking-suit/
[18] *Id.*
[19] Studio 6 – An Iconic American Brand, https://g6hospitality.com/our-brands/#about-motel-six (last visited Aug. 10, 2023).
[20] *G6 HOSPITALITY ANTI-HUMAN TRAFFICKING TRAINING*, http://g6propertycollateral.com/wpcontent/uploads/2020/02/G6_TheRoomNextDoor_Training_V12b_NoFacilitator.pdf
[21] *Id.*

their hotels. Instead, they have continued financially benefiting by providing venues for the sexual exploitation of victims like Jane Doe (IES).

**a. Sex Trafficking at G6 Branded Hotels was well Known by Defendants.**

52.    Upon information and belief, each of the Defendants monitored criminal activity occurring at G6 branded hotels and were aware of activity indicating commercial sex, sex trafficking and/or related crimes occurring at those branded hotels, including the specific hotel property where Jane Doe (IES) was trafficked.

53.    Scores of news stories from across the US highlight G6's facilitation of sex trafficking and certainly establishes that Defendants knew, or should have known, of the use of G6 branded hotels for sex trafficking.

54.    Information that has become public through news stories establishes the entrenched and pervasive nature of G6's role in providing a venue where sex trafficking has continued unabated for years. Among notable press involving the frequent use of Motel 6 hotels for illegal activity, the following was noted:

- In late 2003, a trafficker set up a sex trafficking venture at a Motel 6 in Connecticut in which two (2) young women were sold for sex eight (8) to ten times per day.[22]

- In April 2009, a sex trafficking venture operated out of a Motel 6 in Toledo, Ohio.[23]

- On March 10, 2010 a Louisiana man was charged with transporting girls from Atlanta to Birmingham for prostitution.[24]

- In approximately September 2011, sex traffickers set up an operation at a Motel 6 in Toledo, Ohio to sell fifteen (15) and sixteen (16) year old girls for sex.[25]

---

[22]Amy Fine Collins, *Sex Trafficking of Americans*: *The Girls Next Door*, Vanity Fair (May 2011), https://www.vanityfair.com/news/2011/05/human-trafficking-201105.
[23]    Five    Toledoans    Indicted    On    Sex    Trafficking    Charges,    ABC7Chicago.com    (Nov.    7,    2010), https://abc7chicago.com/archive/7771888/.
[24]Louisiana Man Charged with Transporting Girls from Atlanta to Birmingham for Prostitution (Mar. 10, 2010) https://www.al.com/spotnews/2010/03/post_511.html
[25]    Mark    Reiter,    Two    Toledoans    Accused    Of    Juvenile    Sex    Trafficking,    The    Blade    (Jun.    1,    2010), https://www.toledoblade.com/Courts/2012/06/02/2-Toledoans-accused-of-juvenile-sex-trafficking-1.ht

- From approximately 2012 through October 2014, two (2) men engaged in a criminal sex trafficking venture of children which operated in part out of a Motel 6 in Harvey, Illinois.[26]

- In January 2012, a couple was charged with prostitution and pimping at a Studio 6 in Roswell, GA.[27]

- Police rescued an eighteen (18) year old girl from a sex trafficker in February 2012, at a Motel 6 in Portland, Oregon.[28]

- In July 2012, a man was accused of trafficking young girls in foster care for sex. The girls often met customers at a Studio 6 in Jacksonville, Florida.[29]

- In August 2012 a person was charged with prostitution at a Studio 6 in Mentor, Ohio.[30]

- In early August 2012 four were indicted in Franklin county's first Atlanta human-trafficking court case.[31]

- In October 2012 Prostitution and violence plague at a Northboro Motel 6.[32]

- The FBI investigated and arrested several individuals in December 2012, for the victimization and human trafficking of several young women and a juvenile at a Motel 6 in Madison, Alabama.[33]

- The Orange County Human Trafficking Task Force busted a criminal enterprise in December 2012 that was selling women for sex out of a Motel 6 in Anaheim, California.[34]

- In approximately March 2013, sex traffickers began operating a sex trafficking venture out of Motel 6 locations in Bangor and Portland, Maine.[35]

---

[26] Press Release, U.S. Dept. of Justice, Two Aspiring Rappers Charged With Operating Sex-Trafficking Ring In Chicago And Suburbs (Jan. 15, 2016), https://www.justice.gov/usaondil/file/813771/download.

[27] Couple arrested for pimping, prostitution, Appen Media (Jan. 17, 2012), https://www.appenmedia.com/public_safety/couple-arrested-for-pimping-prostitution/article_473fe798-1b3d-5c6fb230-547e3e5c4651.html.

[28] Press Release, U.S. Dept. of Justice, Tacoma Pimp Sentenced To 25 Years For Sex-Trafficking Two Victims (Nov. 20, 2013), https://www.justice.gov/usao-or/pr/tacoma-pimp-sentenced-25-years-sextrafficking-two-victims.

[29] Feds:    *Man recruited foster care girls for prostitution*,    News4Jax    (July    6,    2012), https://www.news4jax.com/news/2012/07/07/feds-man-recruited-foster-care-girls-for-prostitution/

[30] Mentor Police: Prostitute Ran Massage Parlor at Hotel, Fox8 (Aug. 3, 2012), https://fox8.com/news/mentorpolice-say-prostitute-ran-make-shift-massage-parlor-at-hotel/.

[31] Four Indicted in Franklin County's First Human-Trafficking Court Case, The Columbus Dispatch (Aug. 2, 2012) https://www.dispatch.com/story/news/crime/2012/08/02/four-indicted-in-franklin-county/23982096007/

[32] Prostitution and Violence Plague Nothboro Motel 6, Telegram & Gazette (Oct. 29, 2012) https://www.telegram.com/story/news/local/east-valley/2012/10/29/prostitution-violence-plague-northboro-motel/49317653007/

[33] *FBI Investigates Human Trafficking At Madison Hotel*, WHNT News 19 (Dec. 7, 2012), https://whnt.com/2012/12/07/fbi-investigates-human-trafficking-at-madison-motel/.

[34] *Suspects Busted in Anaheim Sex Ring*, ABC13 Eyewitness News (Dec. 5, 2012), https://abc13.com/archive/8909784.

[35] Danielle McLean, What Drives Maine Sex Traffickers' Inhumanity, Bangor Daily News Maine Focus (Sept. 12, 2016), https://bangordailynews.com/2016/09/12/mainefocus/what-drives-maine-sex- traffickers-inhumanity/

- In March 2013, A man was arrested for allegedly promoting prostitution.[36]

- Beginning in approximately May 2013, a fifteen (15) year old runaway was trafficked for sex out of the Motel 6 on Caton Avenue in Baltimore, Maryland.[37]

- In May 2013, A pimp was arrested at a Motel 6 in Rohnert Park, California.[38]

- On August 5, 2013, Police arrest four men patronizing prostitutes at Kirkand's Motel 6 which led to executing a backpage.com search warrant.[39]

- On October 03, 2013, a Columbia man was charged with human sex trafficking.[40]

- In Richmond County, Georgia a man was arrested at a local Motel 6 in October 2013 and charged with sex trafficking of two young women.[41]

- Police investigated a sex trafficker in March 2014 and ultimately charged him for his crimes including, but not limited to, selling a seventeen (17) year old girl for sex out of a Motel 6 in Roseville, Minnesota.[42]

- In May 2014, two (2) traffickers were arrested at a Motel 6 in Monterey, California after a twenty-one (21) year old woman escaped from their captivity.[43]

- On May 26, 2014 a man was accused of pimping underage girls out of Stockton Motel 6.[44]

- In the summer of 2014, two (2) girls ages fifteen (15) and sixteen (16) were taken from a children's shelter by a sex trafficker and trafficked out of a Motel 6 in Cutler Bay, Florida.[45]

---

[36] Man Arrested for Allegedly Promoting Prostitution, ABC57 (Mar. 1, 2013)
https://www.abc57.com/news/man-arrested-for-allegedly-promoting-prostitution
[37] Anne Kramer, Man Faces Prison Time For Sex Trafficking Baltimore Teen, WBAL News Radio (Apr. 10, 2014), https://www.wbal.com/article/106578/2/man-faces-prison-time-for-sex-trafficking-baltimore-teen.
[38] Pimp Arrested at Motel 6, Patch.com (May 27, 2013)
https://patch.com/california/rohnertpark-cotati/pimp-arrested-at-motel-6
[39] Police Arrest Four Men Patronizing Prostitutes at Kirkland's Motel 6, Kirkland Reporter (Aug. 5, 2013)
https://www.kirklandreporter.com/news/police-arrest-four-men-patronizing-prostitutes-at-kirklands-motel-6-execute-backpage-com-search-warrant/
[40] Columbia Man Charged with Human Sex Trafficking, The Augusta Chronicle (Oct. 3, 2013)
https://www.augustachronicle.com/story/news/2013/10/04/columbia-man-charged-human-sex-trafficking/14438979007/
[41]  UPDATE: Man Arrested For Sex Trafficking, WRDW.com On Your Side, (Oct. 3, 2013), https://www.wrdw.com/home/headlines/Man-arrested-for-sex-trafficking-226301261.html.
[42]  Man, 25, Is Accused Of Trafficking Teens, Twin Cities Pioneer Press (Jun. 5, 2014), https://www.twincities.com/2014/06/05/man-25-is-accused-of-trafficking-teens-2/
[43] Felix Cortez and Amy Larson, Monterey Police: 2 Human Sex Traffickers Arrested After Victim Escapes Motel,KSBW8 (May 9, 2014), https://ksbw.com/article/monterey-police-2-human-sex-traffickers-arrested-aftervictim-escapes-motel/1054172.
[44] Man Accused of Pimping Underage Girls out of Stockton Motel 6, CBS13 News Sacramento (May 26, 2014)
https://www.cbsnews.com/sacramento/news/man-accused-of-pimping-underage-girls-out-of-stockton-motel-6/
[45] David Goodhue, Next Stop For Man Accused Of Sex Trafficking 2 Teens: Federal Court, Miami Herald (Sept. 2, 2015), https://www.miamiherald.com/news/local/news-columns-blogs/deadline-miami/article33360843.html.

- A Las Vegas man was charged with sex trafficking two (2) victims, including a seventeen (17) year old girl, in January 2015, out of a Motel 6 in Rapid City, Nevada.[46]

- In February 2015, two (2) men were arrested for sex trafficking a fourteen (14) year old girl at a Motel 6 in Seekonk, Rhode Island.[47]

- A local law enforcement investigation resulted in the rescue of a fifteen (15) year old runaway in February 2015, from a Motel 6 near the Oakland, California airport where she was being sex trafficked.[48]

- In North Charleston, South Carolina, a seventeen (17) year old girl was rescued in March 2015 from a Motel 6 by special agents from the United States Department of Homeland Security. The girl was sold for sex, beaten, and starved by a sex trafficker.[49]

- Two men were arrested in March 2015 for sex trafficking a fifteen (15) year old girl at Motel 6 in Austin, Texas.[50]

- In March 2015, police arrested a man for sex trafficking a runaway seventeen (17) year old at a Motel 6 in Warwick, Rhode Island.[51]

- Over a fourteen (14) month period ending in approximately April 2015, at the same Motel 6 in Warwick, Rhode Island had seventy-five (75) arrests on its property for crimes including sex-trafficking.[52]

- In the summer of 2015, a woman was arrested at a Motel 6 in Great Falls, Montana where she was involved in sex trafficking a seventeen (17) year old girl.[53]

---

[46] Las Vegas Man Charged With Human Trafficking In Rapid City, Argus Leader (Jan. 17, 2015), https://www.argusleader.com/story/news/crime/2015/01/17/las-vegas-man-charged-human-trafficking-rapid22city/21922915/.
[47] Stephen Peterson, RI Man Gets Jail In Sex-Trafficking Case Involving Seekonk Motel (Oct. 28, 2016), http://www.thesunchronicle.com/news/local_news/ri-man-gets-jail-in-sex-trafficking-case-involvingseekonk/article_d7a25494-9d21-11e6-8f94-63e5c74facb3.html.
[48] Emilie Raguso, Woman Charged In Berkeley Teen Sex Trafficking Case (Dec. 8, 2015), https://www.berkeleyside.com/2015/12/08/woman-charged-in-berkeley-teen-sex-trafficking-case.
[49] Melissa Boughton, Police Say Teen Starved, Beaten at North Charleston Hotel; Man Arrested in Sex-Trafficking Case (Mar.2, 2015), https://www.postandcourier.com/archives/police-say-teen-starved-beaten-at-north-charlestonmotel-man/article_032153eefcb6-5333-9182-926a7f43dfbf.html.
[50] Lindsay Bramson, Local Teen Saved from Sex Slavery, KXAN Austin (Mar. 6, 2015), https://www.kxan.com/news/local/austin/local-teen-freed-from-sex-slavery-two-charged/1049580764.
[51] Amanda Milkovits, Massachusetts Man Accused Of Trafficking Teen In Warwick Motel, NewportRI.com (Mar. 24, 2015), https://www.newportri.com/article/20150324/NEWS/150329666.
[52] Sarah Kaplan, Crime-Ridden Motel 6 In R.I. Will Hand Over Guest List To Police, The Washington Post (Apr. 28, 2015), https://www.washingtonpost.com/news/morning-mix/wp/2015/04/28/crime-ridden-motel-6-in-r-i-will-handover-guest-list-to-police/?utm_term=.a804ce3f32a8.
[53] Andrea Fisher, Woman Caught Up In Human Trafficking Ring Pleads Guilty (Aug. 29, 2016), https://www.greatfallstribune.com/story/news/local/2016/08/29/woman-caught-human-trafficking-ring-pleadsguilty/89566374/.

- A married couple was indicted in June 2015, for their roles in sex trafficking minor children ages seventeen (17), sixteen (16), and fifteen (15) years old out of a Motel 6 in Everett, Washington.[54]

- In Tuscaloosa, Alabama police rescued a fourteen (14) year old girl from a Motel 6 in June 2015, and a grand jury subsequently charged her assailant with human trafficking and rape.[55]

- In approximately July 2015, sex traffickers sold a fifteen (15) year old girl for sex at a Motel 6 in Pismo Beach, California.[56]

- In November 2015 a man was arrested at a Motel 6 in Ventura, California and was criminally charged with sex trafficking a fifteen (15) year old girl who was found with him.[57]

- Seven (7) people were indicted in January 2016, by a Colorado grand jury for sex trafficking children from 2014 through the summer of 2015, out of hotels in Denver, Colorado, including a Denver area Motel 6.[58]

- In January 2016 a man was arrested at a Motel 6 in Frederick on human trafficking, prostitution charges.[59]

- On April 26, 2016, a man profited from prostitution operation at Midvale Motel 6.[60]

55.     Ultimately, several hundred traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of G6 branded properties.

56.     Based on information and belief, the Defendants managed and monitored on-line reviews of G6 branded hotel locations:

---

[54] Diana Hefley, County Investigating 45 Ongoing Human Sex Trafficking Cases, HeraldNet (Jun. 26, 2015), https://www.heraldnet.com/news/county-investigating-45-ongoing-human-sex-trafficking-cases/.
[55] Tuscaloosa Man Charged With Rape And Trafficking Mississippi Teen, NewsMississippi (Nov. 7, 28 2014), https://newsms.fm/tuscaloosa-man-charged-human-trafficking-mississippi-teen/.
[56] Matt Fountain, Four Accused Of Pimping Out 15-Year-Old Girl In SLO Will Stand Trial, SanLuisObispo.com (May 5, 2016), https://www.sanluisobispo.com/news/local/article75832962.html
[57] Fresno Man Sentenced To Prison For Pimping, Human Trafficking In Ventura County, Ventura County Star (Apr. 26, 2016), https://www.vcstar.com/story/news/local/communities/ventura/2016/04/26/fresno-man-sentenced-toprison-for-pimping-human-trafficking-in-ventura-county/88714698/.
[58] Hsing Tseng, Seven Indicted By Colorado Grand Jury In Child Sex Trafficking Ring Bust, Fox 31 Denver (Jan. 6, 2016), https://kdvr.com/2016/01/06/7-indicted-by-colorado-grand-jury-in-child-sex- trafficking-ring-bust/.
[59] Man Arrested at Motel 6 in Frederick on Human Trafficking, Prostitution Charges, Fox5News (Jan. 15, 2016) https://foxbaltimore.com/news/local/man-arrested-at-motel-6-in-frederick-on-human-trafficking-prostitution-charges#
[60] Charges: Man Profited from Prostitution Operation at Midvale Hotel, KSL.com (Apr. 26, 2016) https://www.ksl.com/article/39513480/charges-man-profited-from-prostitution-operation-at-midvale-hotel

- A 2010 TripAdvisor review out of Maine states, "[M]y tour group and I figured that we should just stay here considering we were only staying here one night...There was dirtbags hanging around the pool area, and in the little yard area on the side. It looked as if all of the people who LIVED THERE were on drugs by the way they talked! Also during my stay there we saw a prostitute who must have been living there! She looked anorexic and came into the lobby telling the receptions that the cops might be coming so tell her if they show up! (i am not making any of this up) there was also "a security guard" there waiting in the lobby all day and throughout the night making sure that the prostitute did not leave. They told the receptionist that the prostitute had 2 clients upstairs..."[61]

- A 2011 Yelp review in California states, "…We paid to spend two night, but after one night of being terrorized by pimps, prostitutes, "druggies" and homeless sleeping in cars we checked out…Our lasting memory should be the beautiful wedding, but instead it will be know as our night of terror. The management is well aware of this and contribute to the problem by renting rooms to these terrorist..."[62]

- A 2011 TripAdvisor review from California states, "…After watching the pedestrian and vehicle traffic for a period of time in the immediate area, it is apparent that the staff does not decline service to prostitutes w/ their protection (pimps) and drug dealers...While the affordable rates are the draw, once your there, you'll realize that Corporate hasn't paid attention to what occurs there or doesn't care as long as the money keeps coming in."[63]

- A 2011 Yelp review from California states, "Sheets and towels are frequently stained. Prostitution is a problem at this location, leading me to believe management and the staff (who are very friendly with the hookers) turns a blind eye to it to fill rooms or is being paid to look the other way…"[64]

- A 2011 TripAdvisor review from North Carolina states, "Can you say prostitute headquarters!!!  After reading good ratings about this motel and experienced staying here one night.  All I have to say is 'NEVER AGAIN' don't waste your money here.  There's people who walk around the parking lot late at night and prostitutes standing around the stairs.  Definitely not a family friendly place to stay the night at.  The bed had hair on it from previous customers and the shower didn't drain properly.  Just overall disgusting.  Doesn't seem like they change the sheets or mop the floors.[65]

---

[61]https://www.tripadvisor.com/Hotel_Review-g41519-d244102-Reviews-Motel_6_Boston_North_DanversDanvers_Massachusetts.html

[62] https://www.yelp.com/bix/motels-6-santa-rosa-south-santa-rosa

[63] https://www.tripadvisor.com/Hotel_Review-g32810-d78752-Reviews-Motel_6_Oakland_AirportOakland_California.html

[64] https://www.yelp.com/biz/motel-6-salinas

[65] https://www.tripadvisor.com.ph/ShowUserReviews-g49022-d94184-r119050612-Motel_6_Charlotte_Coliseum-Charlotte_North_Carolina.html

- A 2012 TripAdvisor review from Colorado states, "…The first night, I received phone call after phone call, asking if I wanted "sexual favors" done to me. NO!!!!! I also witnessed numerous drug dealings going on, and had my door banged on several times…Upon checkout, I explained issues to the clerk (the same person who checked me in) and she said, oh well…"[66]

- A 2012 Yelp review out of Texas states, "Do not stay here. Just stayed here and had some shadey stuff goin on…for one the hotel is a front for a prostitution ring the owners are running…I turned down one of the girls who in which called my room phone and asked if I wanted company and soon after had one with purple hair and what looked like her pimp at my door. I didn't answer I just watched through the peep hole. after they knocked for about 5 mins they left. As soon as I got comfortable I hear someone messing with my door and I look through the peep hole and they are back and are trying to use a key.. woooow..."[67]

- A 2012 Yelp review from California states, "what to say about the "no tell motel sex" lol sad but true...my neighboor had people as in men in and out all night long if you get my drift, and when i called the front desk they said they would check it out and never did…"[68]

- A 2013 TripAdvisor review out of Illinois states, "I have recently been relocated with my job out here so looking for a place in glenview area. I stood here for a week. They had pimps and prostitution going on next door, under and across from me my whole week hear. I told front desk of the noise and loud banging they were making all day and night long. The front desk called one room where they were in the prostitute got rude with her you can hear it they were told to check out but the same day they checked back in next door to me. Staff here must be in on it some how cause I watched a pimp and a few under age girls go in and out a few rooms across and next to me all night long with custermers. The following morning around 5am I was woken to a girl in the hall yelling at the pimp who just hit her. It gets better I guess staff told them I made a complaint so then after they were banging on my door and getting rooms next to me as well making extreme noise so they can get me out..."[69]

- A 2013 TripAdvisor review from New York states, "If you like drugs and drug addicts and drug dealing and prostitutes, this is the place to go. Not only do these people live in the hotel and use it as a place of business, but some of the staff is involved in drug dealing as well…"[70]

---

[66] https://www.tripadvisor.com/Hotel_Review-g33388-d83061-
ReviewsMotel_6_Denver_Central_Federal_Boulevard-Denver_Colorado.html
[67] https://www.yelp.com/biz/motel-6-dallas-4 57 https://www.yelp.com/biz/motel-6-escondido?start=60
[68] https://www.yelp.com/biz/motel-6-escondido?start=60
[69] https://www.tripadvisor.com/Hotel_Review-g36052-d243950-Reviews-
Motel_6_Chicago_North_GlenviewGlenview_Illinois.html
[70] https://www.tripadvisor.co.nz/Hotel_Review-g29810-d93070-r172297063-
Motel_6_Amherst_NY_BuffaloAmherst_New_York.html

57.     This sampling of news stories, reviews, and other public information establishes that, at the time Jane Doe (IES) was trafficked at the subject Motel 6 property, the G6 Defendants knew or should have known that:

    a.  There was widespread and ongoing sex trafficking occurring at G6 branded property.

    b.  Sex trafficking was a brand-wide problem for G6 originating from management level decisions at their corporate offices in Carrollton, Texas.

    c.  G6 franchisee hotel staff were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel property and were facilitating sex trafficking at the branded hotel property.

    d.  G6's efforts, if any, to stop facilitating sex trafficking in their branded property was not effective.

    e.  G6 and its franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

58.     Despite the mounting evidence that sex trafficking at its property was ongoing and growing, G6 continued to earn revenue by continuing conduct that they knew or should have known would continue to facilitate that trafficking.

   **b. G6 Defendants had actual and constructive knowledge of widespread and ongoing sex trafficking at the subject Motel 6**

59.     G6 Defendants were specifically aware that sex trafficking was widespread and ongoing at the subject Motel 6.

60.     Internet reviews for the subject Motel 6 which upon information and belief the G6 Defendants managed and monitored, show the pervasiveness of criminal behavior at the subject Motel 6.  For example, the G6 Defendants were, on information and belief, aware of the following reviews for the Motel 6 at 1860 Bowles Ave., Fenton, MO 63026:

    •   An Expedia review on 6/25/2014 states, "This hotel was nasty in every way! Despite booking (with a hotels.com rep) a smoke free room the room we entered reeked worse than smoky night club. The lady at the front desk was rude and

informed me they didn't even have smoke free rooms. The whole places was filthy and looked like a drug haven on an episode of CSI."[71]

- A Google review in 2016 states, "I have slept at motels where drug addicts go to die. This was not THAT bad. But it wasn't too great either. The door/jamb was damaged, it had a 1/2"+ gap through which daylight shone. The deadbolt barely projected 3/8" into the wall plate,"[72]

- A Google review in 2017 states, "There are bedbugs and I found drug addict syringes under my bed and the room stinks it's the worst thing I've seen in a super 6 I have photos of everything I don't recommend it just look for a place to get high"[73]

On information and belief criminal behavior, including sex trafficking, had been ongoing at the subject Motel 6 for long period of time, including before and during the Plaintiff's trafficking period.

61.    On information and belief, traffickers, including Jane Doe (IES)'s trafficker, repeatedly chose to use the subject Motel 6 for their sex trafficking activity. As such, Defendants also knew or should have known about the pervasive sex trafficking at the subject Motel 6 based on obvious indicators of this activity.

62.    Upon information and belief, there were multiple trafficking victims exploited at

---

[71] https://www.expedia.com/St-Louis-Hotels-Motel-6-Fenton-MO.h56494.Hotel-Reviews
[72] https://www.google.com/travel/hotels/Motel%206%201860%20Bowles%20Ave,%20Fenton,%20MO%2063026%20google/entity/CgoIkZaXucy3uoEXEAE/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4906023,4923542,4926165,4926489,4931360,4936396,4937897,4940607,47061553&hl=en-IN&gl=in&ssta=1&q=Motel+6+1860+Bowles+Ave,+Fenton,+MO+63026+google&grf=EmQKLAgOEigSJnIkKiIKBwjnDxACGAwSBwjnDxACGA0gADAeQMoCSgcI5w8QARgfCjQIDBIwEi6yASsSKQonCiUweDg3ZDhkMWI4NjE4YTczNGI6MHgxNzAyZTTliY2M3MjVjYjEx&rp=EJGWl7nMt7qBFxCRlpe5zLe6gRc4AkAASAHAAQI&ictx=1&sa=X&ved=2ahUKEwie0-mfyPH8AhWUkWoFHWwlDDIQ4gl6BAhnEAU
[73] https://www.google.com/travel/hotels/Motel%206%201860%20Bowles%20Ave,%20Fenton,%20MO%2063026%20google/entity/CgoIkZaXucy3uoEXEAE/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4906023,4923542,4926165,4926489,4931360,4936396,4937897,4940607,47061553&hl=en-IN&gl=in&ssta=1&q=Motel+6+1860+Bowles+Ave,+Fenton,+MO+63026+google&grf=EmQKLAgOEigSJnIkKiIKBwjnDxACGAwSBwjnDxACGA0gADAeQMoCSgcI5w8QARgfCjQIDBIwEi6yASsSKQonCiUweDg3ZDhkMWI4NjE4YTczNGI6MHgxNzAyZTTliY2M3MjVjYjEx&rp=EJGWl7nMt7qBFxCRlpe5zLe6gRc4AkAASAHAAQI&ictx=1&sa=X&ved=2ahUKEwie0-mfyPH8AhWUkWoFHWwlDDIQ4gl6BAhnEAU

the subject Motel 6 prior to Jane Doe (IES)'s trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management including paying with cash or prepaid cards, having high volumes of men who not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red flags" of trafficking identified above. Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were being subjected to violence, coercion, control, and exploitation.

63.    All knowledge from the staff at the Motel 6 is imputed to G6. G6 knew about this widespread and ongoing trafficking at the Motel 6, including trafficking of Jane Doe (IES), through the direct observations of the hotel staff, including management-level staff.

64.    Upon information and belief, all Defendants knew or should have known about the widespread trafficking at the subject Motel 6, based on:

a.  The obligation of hotel staff and hotel management to report suspected criminal activity including sex trafficking to the G6 Defendants and the Franchisee;

b.  The Defendants' regular monitoring of online reviews reflecting criminal activity;

c.  The Defendants' collection and monitoring of customer surveys and complaints;

d.  The Defendants' regular inspections of the hotel property;

e.  Information provided to Defendants by law enforcement; and

f.  Other sources of information available to Defendants.

65.    Upon information and belief, under the G6 Defendants' protocols, which on their face required the Franchisee and hotel staff and management to report suspected criminal activity to the G6 Defendants, the Franchisee and hotel staff and management were required to report

numerous instances of suspected sex trafficking prior to Jane Doe (IES)'s trafficking based on the numerous "red flags" exhibited by the victims who were exploited at the subject Motel 6.

    **c. Defendants knew Jane Doe (IES) was being trafficked at the subject Motel 6 because of the apparent and obvious "red flags" of sex trafficking.**

66.    During the period that Jane Doe (IES) was trafficked at the subject Motel 6, there were obvious signs that her trafficker was engaged in sex trafficking. For example, at the Motel 6 at 1860 Bowles Avenue, Fenton, MO 63026:

    a.  Jane Doe (IES) or a John would pay for the room with cash or prepaid credit cards.

    b.  Jane Doe (IES) would appear to be with a significantly older "boyfriend" and have lower quality clothing compared to males she was with.

    c.  At check in, the hotel staff observed Jane Doe (IES) exhibit evidence of being verbally threatened and emotional abuse.

    d.  Jane Doe (IES) would reserve multiple rooms. She would have few or no personal items when checking in.

    e.  Jane Doe (IES) would often be dropped off at the hotel by her trafficker.

    f.  The room Jane Doe (IES) was trafficked in would be rented out for an hourly stay or a long term stay that did not seem normal.

    g.  Jane Doe (IES) could be seen loitering on property and appearing to monitor the area.

    h.  Jane Doe (IES) had heavy foot traffic of non-hotel guests and older males coming from the room she was trafficked in.

    i.  Jane Doe (IES) would try not to be seen by the front desk.

    j.  The "Do Not Disturb" door hanger was used very frequently.

    k.  After Jane Doe (IES) checked out, hotel cleaning staff would have noticed sex paraphernalia like condoms and lubricant in the

    l.  Jane Doe (IES) prevented housekeeping staff from entering the room for regular cleaning.

    m.  Other obvious signs of trafficking consistent with the modus operandi of her

trafficker and which included well known "red flags" for trafficking in a hotel.

67.    Based upon information and belief, multiple employees at the Motel 6, including management-level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

68.    As such, Defendants knew or were willfully blind to the fact that Jane Doe (IES) was being trafficked at the subject Motel 6 property.

69.    Given these obvious signs, G6 knew or should have known about the trafficking of Jane Doe (IES) based on its policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking.

70.    Defendants also knew or should have known about Jane Doe (IES)'s trafficking based on the other methods, listed above, that they used to monitor and supervise the subject Motel 6.

IV.    **Defendants actively facilitated sex trafficking at the subject Motel 6, including the trafficking of Jane Doe (IES)**

71.    Defendants had both actual and constructive knowledge of the trafficking of Jane Doe (IES) at the subject Motel 6 because the trafficking was the direct result of Defendants facilitating her trafficking at the subject Motel 6 property.

a.    **The Franchisee Defendant facilitated the trafficking of Jane Doe (IES) at the subject Motel 6.**

72.    The Franchisee Defendant is responsible for the acts, omissions, and knowledge of all employees of the Motel 6 when operating the hotels because these acts and omissions were committed in the scope and course of employment, because the Franchisee Defendant ratified these acts and omissions, and because Franchisee Defendant failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known

to the Franchisee Defendant, of sex trafficking occurring at Motel 6 branded locations including the subject location.

73.    Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Motel 6, the Franchisee Defendant continued renting rooms to these traffickers, including the rooms used to sexually exploit victims, including Jane Doe (IES).

74.    The Franchisee Defendant knew or was willfully blind to the fact that Jane Doe (IES) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them a venue in the form of hotel rooms and related services, to facilitate Jane Doe (IES)'s sexual exploitation.

75.    The Franchisee Defendant also facilitated widespread trafficking at the Motel 6, including the trafficking of Jane Doe (IES), in ways including:

a.    allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking;

b.    inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

c.    choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and/or applicable franchisor policies and procedures;

d.    implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

**b.  G6 Defendants facilitated the trafficking of Jane Doe (IES) at the subject Motel 6.**

76.    G6 Defendants are responsible for the acts, omissions, and knowledge of its Franchisee and the Franchisee employees of the Motel 6 because G6 Defendants failed to exercise reasonable care with regard to assuring that the Franchisee's hiring, training, and supervision of

these employees, given the specific risks known to G6 Defendants of sex trafficking occurring at Motel 6 branded locations, was designed to prevent trafficking at the subject location.

77.    G6 Defendants also facilitated widespread trafficking at the Motel 6, including the trafficking of Jane Doe (IES), in ways including:

a.  allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking;

b.  allowing inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

c.  implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

**c.  G6 Defendants facilitated the trafficking of Jane Doe (IES) at the subject Motel 6 location.**

78.    Upon information and belief, the G6 Defendants participated directly in aspects of the operation of the subject Motel 6 that influenced whether and to what extent trafficking occurred at the hotel, including but not limited to the trafficking of Jane Doe (IES), as follows:

a.  The G6 Defendants have publicly assumed responsibility and control over the human trafficking response of all Motel 6 property, including design and implementation of practices to prevent trafficking, safety and security procedures, employee and franchisee education, training, and response, partnership with external organizations, and advocacy.

b.  The G6 Defendants retained control over when its branded hotels would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity in G6 branded hotels.

c.  The G6 Defendants retained control over the response to trafficking by creating a reporting hotline for hotel staff and franchisees to report suspected human trafficking to the G6 Defendants. The G6 Defendants determined when issues should be escalated to the National Human Trafficking Hotline or law enforcement.

d.  The G6 Defendants retained control over determining which hotels needed additional training or other resources based on a high risk of human trafficking and

other related criminal activity.

e.  The G6 Defendants expressly retained control to terminate hotel staff and/or a franchising agreement based on the response to human trafficking.

f.  The G6 Defendants retained control, at the brand-wide level, over training on how to spot the signs of and help prevent human trafficking. The G6 Defendants determined whether the training is provided, when it is provided, the content of the training, how the training is delivered, who receives the training, and the consequences if someone does not participate in the training or fails to follow such training.

g.  Although they delayed making any reasonable effort to do so, the G6 Defendants acknowledge that they retain control to adopt requirements for franchised hotels specifically designed to prevent human trafficking and other criminal activity.

h.  The G6 Defendants maintain a Safety & Security Team and a Critical Incident Rapid Response Team that are charged with investigating and responding to potential criminal incidents at all Motel 6 property, including suspected trafficking incidents.

i.  The G6 Defendants are responsible for adopting, enforcing, and monitoring policies and codes of conduct related to human trafficking at the subject Motel 6.

j.  The G6 Defendants maintained control over all details of the terms under which franchised hotels, including the subject Motel 6, offered internet services to customers, including dictating the software, hardware, and service provider to be used, setting all policies about use and restrictions on use, and actively collecting and monitoring guest internet usage data.  The G6 Defendants dictated whether sites frequently used to solicit clients for sex trafficking victims would be assessable through the internet at the subject Motel 6.

k.  The G6 Defendants controlled the setting, supervision, overseeing, and enforcement of detailed policies and protocol for housekeeping services at the subject Motel 6, including policies for how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services.

l.  The G6 Defendants collected, maintained, and analyzed detailed data regarding housekeeping services at the subject Motel 6, including trends that would reveal patterns consistent with human trafficking.

79.   G6 directly participated in and retained day-to-day control over renting rooms at the subject Motel 6 by, among other things:

a.  The G6 Defendants controlled all details of the guest reservation, check-in, and payment processes through management and control over all systems used for those processes and adoption of detailed and specific policies governing the means and methods used for each of these processes.

b.  The G6 Defendants directly made reservations for rooms at the subject Motel 6 and accepted payment for those rooms through a central reservation system that they controlled and operated. The G6 Defendants could reserve rooms and accept payments without requiring franchisee approval or involvement.

c.  The G6 Defendants established and maintained control over a brand-wide "do not rent" system. The G6 Defendants set all policies related to use of this system and dictated the day-to-day details of reservations at the subject Motel 6 through detailed policies that it established regarding use of this "do not rent" system.

d.  The G6 Defendants controlled room rates, required discounts, mandatory fees, and rewards programs.

e.  The G6 Defendants controlled and restricted the ability of franchisees and staff to refuse or cancel a reservation.

f.  The G6 Defendants controlled and oversaw policies and procedures regarding check-in, payment and identity verification procedures.

g.  The G6 Defendants collected, retained, monitored, and analyzed detailed data about every guest who stayed at the subject Motel 6.

h.  The G6 Defendants established detailed policies and protocol that dictated, step-by-step, everything that would happen from the time a guest arrived at the subject Motel 6 until they entered their guest room. This included operational directives regarding payment methods, identification requirements, the number of guests that could be in each room and whether information needed to be collected for each guest, what questions hotel staff should and should not ask, and other matters related to check-in.

i.  The G6 Defendants required franchisees to use G6's property management system, which was owned, maintained, controlled, and operated by the G6 Defendants, for virtually all aspects of hotel operations regarding room reservations and payment.

80.    Upon information and belief, despite having actual or constructive knowledge of the ongoing sex trafficking at the subject Motel 6, the G6 Defendants continued participating in a venture at that hotel, with its franchisees and the hotel staff, in a way that it knew or should have known would lead to additional sex trafficking at the hotel, including but not limited to by the

following:

    a.   The G6 Defendants adopted inappropriate and inadequate practices for selecting, training, supervising, managing, and disciplining franchisees and hotel staff regarding issues related to human trafficking.

    b.   The G6 Defendants provided inadequate training on issues related to human trafficking and unreasonably delayed providing training.

    c.   The G6 Defendants adopted a safety and security budget and safety and security practices that were clearly insufficient considering the known problem of sex trafficking at the subject Motel 6 property.

    d.   The G6 Defendants implicitly approved decisions by franchisees and hotel staff not to report or respond to criminal activity including sex trafficking appropriately.

    e.   The G6 Defendants continued to use policies, protocols, and practices that had been shown to lead to widespread trafficking at the subject Motel 6.

    f.   The G6 Defendants attracted traffickers by affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal.

    g.   Despite having specific knowledge of policies that would significantly reduce sex trafficking at its branded locations including the subject Motel 6, the G6 Defendants declined to implement policies that would likely have the effect of reducing its sex-trafficking related profits or that would require publicly acknowledging the ongoing problem of sex trafficking at its properties.

    h.   The G6 Defendants willfully delayed taking obvious and apparent steps to stop facilitating sex trafficking, which they had the ability and responsibility to take sooner.

    i.   The G6 Defendants allowed traffickers to reserve rooms using cash, which provided relative anonymity and non-traceability.

    j.   The G6 Defendants provided traffickers with access to internet services in a manner that the G6 Defendants knew or should have known would be used to facilitate trafficking by promoting commercial sex services online.

    81.   If G6 had exercised reasonable diligence when operating the Motel 6 and in the areas where it retained control, G6 would have prevented the Motel 6 from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of Jane Doe (IES). Instead, G6

engaged in the course of conduct that affirmatively facilitated widespread and ongoing sex trafficking, including the trafficking of Jane Doe (IES).

**V.    Defendants' ventures at the Motel 6.**

82.    Through the conduct described above, Defendants knowingly benefited from engaging in a venture with sex traffickers at the Motel 6, including Jane Doe (IES)'s trafficker, as follows:

    a.  Defendants received benefits, including increased revenue, every time a room was rented at the Motel 6.

    b.  This venture engaged in violations of 18 U.S.C. §1591 through the actions of the criminal traffickers at the subject Motel 6, which Defendants knew or should have known about.

    c.  Defendants associated with traffickers, including Jane Doe (IES)'s trafficker, by acting jointly to continue to rent rooms to these traffickers despite having actual or constructive knowledge of their sex trafficking activity.

    d.  Defendants had a mutually beneficial relationship with the traffickers at the Motel 6, fueled by sexual exploitation of victims, including Jane Doe (IES).

    e.  Sex traffickers, including Jane Doe (IES)'s trafficker, frequently used the subject Motel 6 for their trafficking because of an implicit understanding that the Motel 6 were a venue that would facilitate their trafficking, providing minimal interference and lowering their risk of detection. This understanding occurred because of the conduct of Defendants facilitating that trafficking as described throughout this complaint. This resulted in benefits, including increased revenue, for Defendants.

    f.  All Defendants participated in this venture through the conduct described throughout this Complaint as they were jointly responsible for relevant aspects of hotel operations.

    g.  Jane Doe (IES)'s trafficking at the subject Motel 6 was a result of Defendants' participation in a venture with criminal traffickers. If Defendants had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe (IES)'s trafficking at the Motel 6.

83.    Through the conduct described above, each of the Defendants also knowingly benefited from engaging in a commercial venture with other Defendants and with hotel staff as

follows:

    a. Defendants associated with one another and with the hotel staff to operate the subject Motel 6.

    b. As detailed above, each Defendant received financial benefits from operating the subject Motel 6, including revenue generated specifically by renting rooms to traffickers. They engaged in revenue sharing and had a common incentive to maximize revenue.

    c. By participating in a venture that facilitated sex trafficking, Defendants also benefitted by keeping operating costs low, maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade and by not acknowledging the pervasive nature of sex trafficking in their hotels generally and the subject Motel 6 specifically.

    d. This venture violated 18 U.S.C. §§ 1591(a) and 1595(a) through the conduct of the Defendants and the widespread sex trafficking at the subject Motel 6.

    e. Despite its actual or constructive knowledge that the venture was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), each Defendant participated in the venture by continuing to associate with the hotel staff and with other Defendants to operate the subject Motel 6 in a way that the Defendants knew or should have known would lead to further violations of 18 U.S.C. §1591(a), including trafficking of victims like Jane Doe (IES).

    f. Jane Doe (IES)'s trafficking at the subject Motel 6 was a result of hotel staff and Defendants' facilitation of the widespread and ongoing violations of 18 U.S.C. §§ 1591(a) and 1595(a) at the subject Motel 6. Had Defendants not continued participating in a venture that it knew or should have known was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), they would not have received a benefit from Jane Doe (IES)'s trafficking at the subject Motel 6.

**VI.  Franchisee Defendants and the Staff at the Motel 6 Acted as Actual Agents of G6.**

84.  G6 is vicariously liable for the acts, omissions, and knowledge of the Franchisee Defendant and staff at the Motel 6, which are G6's actual agents or subagents.

85.  The G6 Defendants subjected the Franchisee Defendant to detailed standards and requirements regarding the operation of the Motel 6 through the franchising agreement, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations imposed by the G6 Defendants.

86.    The G6 Defendants obscure the full extent of control they exercise over the franchisees by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those policies and manuals. Upon information and belief, the standards that the G6 Defendants imposed on the franchisee:

a. did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools the Franchisee Defendant used at the Motel 6;

b. covered virtually all aspects of hotel operations, including internal operating functions;

c. dictated the specific manner in which Franchisee Defendants and hotel staff must carry out most day-to-day functions at the subject Motel 6; and

d. significantly exceeded what was necessary for G6 to protect its registered trademarks.

87.    In addition to the ways described above, upon information and belief, G6 exercised and reserved the right to exercise systemic and pervasive control over the Franchisee Defendant's day-to-day operation of the Motel 6, including the following ways:

a. The G6 Defendants required franchisees and management of franchised hotels to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations, including aspects of hotel operations that go significantly beyond what would be necessary for the G6 Defendants to protect their registered trademarks.

b. The G6 Defendants provided training for hotel management and select hotel staff on-site at the Motel 6 and at locations selected by the G6 Defendants.

c. The G6 Defendants required all hotel staff to participate in training it created through an online learning platform it controlled and maintained.

d. The G6 Defendants controlled training provided by franchisees to hotel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used.

e. The G6 Defendants retained sole discretion to determine whether all training had been completed satisfactorily.

f.  For certain products and services that franchisees were required to purchase to operate the Motel 6, the G6 Defendants designated approved vendors and prohibited franchisees from purchasing goods and services from anyone other than an approved vendor.

g.  The G6 Defendants required franchisees to sign a technology agreement governing the terms under which franchisees must procure and use technical services and software while operating the Motel 6. Franchisees were required to install, and use certain brands, types, makes, and/or models of hardware, software, peripheral equipment, and support services to perform internal operating functions at the hotel.

h.  The G6 Defendants set required staffing levels for the Motel 6.

i.  The G6 Defendants established detailed job descriptions for all positions in its Motel 6 property and drafted numerous, detailed policies that referenced these positions and dictated which positions must perform which tasks and how they must do so.

j.  The G6 Defendants set requirements for the hiring process used by franchisees and oversaw employee discipline processes and termination decisions.

k.  The G6 Defendants provided benefits for employees of franchised hotels.

l.  The G6 Defendants required the Defendant Franchisee to use a customer resource management program maintained and operated by the G6 Defendants.

m.  The G6 Defendants controlled channels for guests to report complaints or provide feedback regarding the Motel 6 and directly participated in the response and/or supervised and the response to customer complaints or other feedback. The G6 Defendants retained the right to provide refunds or other compensation to guests and to require the Defendant Franchisee to pay associated costs.

n.  The G6 Defendants generated reports and analysis of guest complaints and online reviews for the Motel 6.

o.  The G6 Defendants required the Defendant Franchisee to use a Guest Relations Application owned, operated, and maintained by the G6 Defendants to manage all guest data and information. The G6 Defendants could use the backend of this system to analyze data and generate reports.

p.  The G6 Defendants set detailed requirements for insurance that franchisees must purchase and retained the right to purchase insurance for franchisees and to bill franchisees directly for that insurance if the G6 Defendants determined that the franchisees has not purchased adequate insurance.

q.  The G6 Defendants regularly audited the books and records of the Defendant

34

Franchisee.

r.   The G6 Defendants conducted frequent and unscheduled inspections of Motel 6 property, including the subject Motel 6.

s.   The G6 Defendants retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of the franchising agreement if franchisees violated any of the G6 Defendants' detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the Motel 6.

t.   The G6 Defendants controlled all marketing for the Motel 6 and prohibited franchisees from maintaining any online presence unless specifically reviewed and approved by the G6 Defendants.

u.   The G6 Defendants imposed detailed recordkeeping and reporting requirements on the Franchisee Defendant regarding virtually all aspects of hotel operations.

v.   The G6 Defendants supervised and controlled day-to-day operations of the Motel 6 through detailed information and extensive reports that it obtained through the property management system and other software systems it required the Franchisee Defendant to use.

w.   The G6 Defendants retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

## VII.   G6 Defendants are jointly responsible for the trafficking of Jane Doe (IES).

88.    All the G6 Defendants and the Franchisee Defendant were participants in a joint venture, which involved a common enterprise, profit-sharing, a community of interests, and joint rights of control and management, and are vicariously liable for the violations of the other participants in the joint venture.

89.    Upon information and belief, operation of the subject Motel 6 was part of a single unified operation by G6 Defendants and the Franchisee Defendant. Upon information and belief, all G6 Defendants shared a common parent company, were subject to joint control, and operated as an integrated enterprise and/or as alter-egos. Upon information and belief, G6 Defendants acted jointly to operate, control, and manage the subject Motel 6.  As an integrated enterprise and/or

joint venture, Defendants were separately and jointly responsible for compliance with all applicable laws.

**VIII.  Defendants are Jointly and Severally Liable for Jane Doe (IES)'s Damages.**

90.    The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Jane Doe (IES).

91.    Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Jane Doe (IES) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

<u>**CAUSES OF ACTION—SEX TRAFFICKING UNDER THE TVPRA**</u>

92.    Jane Doe (IES) incorporates all other allegations.

**I.    Cause of Action: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a) (all Defendants)**

93.    Jane Doe (IES) is a victim of sex trafficking within the meaning of § 1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" for any violation of the TVPRA.

94.    Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because they:

   a.  violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, they harbored individuals (including Jane Doe (IES)) knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at their respective hotel properties.

   b.  violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, they knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at their respective hotel properties.

95.    Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane

Doe (IES) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel property.

II.    **Cause of Action: Beneficiary Liability under §1595 (a) of the TVPRA (all Defendants).**

96.    Jane Doe (IES) is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

97.    Through acts and omissions described throughout this Complaint, Defendants received a financial benefit from participating in a venture with traffickers, including Jane Doe (IES)'s trafficker, despite the fact that each defendant knew or should have known that these traffickers, including Jane Doe (IES)'s trafficker, were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2). Thus, Defendants are liable as a beneficiary under 18 U.S.C §1595(a).

98.    Violations of 18 U.S.C §1595(a) by Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (IES) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel property.

III.    **Cause of Action: Vicarious Liability for TVPRA Violations (G6 Defendants).**

99.    Under the TVPRA and the federal common law, each member of a joint venture is vicariously liable for the acts and omissions of all other members of that joint venture.

100.    Under the TVPRA and the federal common law, an entity is vicariously liable for the acts and omissions of its alter-egos.

101.    Franchisee Defendants acted as the actual agents of G6 Defendants when operating its respective hotel property.

102.    Through the acts and omissions described throughout this Complaint, G6 Defendants exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisee to operate its respective hotel property.

103.    G6 Defendants are vicariously liable for the TVPRA violations of its franchisee and the subagents of that franchisees.

104.    Additionally, on information and belief, each of the G6 Defendants participated in a joint venture operating the Motel 6. They had highly integrated operations at the hotel, shared revenue and profits generated from the hotel, and exercised mutual control over the venture at the hotel. They functioned as a single integrated entity and/or as alter-egos of one another.

## DISCOVERY RULE

105.    To the extent Defendants assert an affirmative defense of limitations, Jane Doe (IES) invokes the discovery rule. At the time she was harmed and through at least 2013, Jane Doe (IES) was under coercion and control of trafficker who abused and manipulated her. Thus, Jane Doe (IES) did not discover and could not reasonably have discovered the legal cause of her injury. While she was under the control of her trafficker, Jane Doe (IES) —through no fault of her own— lacked the information to bring a claim because she did not know both her injury and the cause of her injury. This lack of information was a direct result of (IES) being kept under the control of her trafficker, which Defendants facilitated.

106.    At the time Jane Doe (IES) was harmed, she did not know that she was the victim of human trafficking as that term is defined by law, that her injury arose from being trafficked at Defendants' hotel or that she was a person trafficked, much less that she was being victimized by

a human trafficking venture, and she did not discover and was not in a position to discover the legal cause of her injury.

107.    To the extent Defendants assert an affirmative defense of limitations, Jane Doe (IES) invokes the doctrine of equitable tolling because, as a result of being a victim of trafficking, Jane Doe (IES) faced extraordinary circumstances, which arose through no fault of her own, that prevented her from filing a lawsuit, and those circumstances did not end more than 10 years before Jane Doe (IES) filed this lawsuit.

108.    As a result of her continuous trafficking at the subject Motel 6 through at least 2013, Jane Doe (IES) was beaten, drugged, sexually assaulted, and mentally abused. She lacked the mental capacity to recognize the extent and scope of her injuries or those responsible, particularly those who financially benefited from her trafficking but may not have been seen to be directly involved.

109.    Jane Doe (IES) was under the continuous control of her trafficker through at least 2013. As a result, she did not have the freedom to investigate her claims, to identify those responsible or to seek legal representation necessary to pursue her legal rights.

110.    To the extent Defendants assert an affirmative defense of limitations, Jane Doe (IES) also invokes the continuing tort doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct.

111.    Jane Doe (IES) was subject to continuous trafficking at the subject Motel 6 through at least 2013, which is not more than 10 years before Jane Doe (IES) filed this lawsuit.

112.    This continuous trafficking resulted from Defendants' continuous facilitating of trafficking at the subject Motel 6 and Defendants' ongoing venture with one another and with criminal trafficker.

## **DAMAGES**

113.    Defendants' acts and omissions, individually and collectively, caused Jane Doe (IES) to sustain legal damages.

114.    Defendants are joint and severally liable for all past and future damages sustained by Jane Doe (IES).

115.    Jane Doe (IES) is entitled to be compensated for personal injuries and economic damages, including:

a.   Actual damages (until trial and in the future)

b.   Incidental and consequential damages (until trial and in the future);

c.   Mental anguish and emotional distress damages (until trial and in the future);

d.   Lost earnings and lost earning capacity (until trial and in the future);

e.   Necessary medical expenses (until trial and in the future);

f.   Life care expenses (until trial and in the future);

g.   Physical pain and suffering (until trial and in the future);

h.   Physical impairment (until trial and in the future);

i.   Exemplary/Punitive damages;

j.   Attorneys' fees; and

k.   Costs of this action.

l.   Pre-judgment and all other interest recoverable.

## **JURY TRIAL**

116.    Jane Doe (IES) demands a jury trial on all issues.

## **RELIEF SOUGHT**

117.    WHEREFORE, Jane Doe (IES) prays that this case be set for trial before a jury and

that, upon a final hearing of the cause, judgment be entered for Jane Doe (IES) against all Defendants jointly and severally for the actual, compensatory, and punitive damages as the evidence may show, and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Jane Doe (IES) may, in law or in equity, show herself to be justly entitled.

Respectfully submitted,



By:   /s/ Kenneth T. Fibich
      Kenneth T. Fibich
      Texas Bar No. 06952600
      tfibich@fibichlaw.com
      Sara J. Fendia
      Texas Bar No. 06898800
      sfendia@fibichlaw.com
      1150 Bissonnet Street
      Houston, Texas 77005
      713-751-0025 (Telephone)
      713-751-0030 (Facsimile)

**ATTORNEYS FOR PLAINTIFF**